**Roberto A. VARGAS–GONZALEZ, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 96–536.

United States Court of Appeals for Veterans Claims.

April 12, 1999.

Sean Kendall was on the briefs for the appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Michael R. Smalls were on the briefs for the appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Roberto A. Vargas–Gonzalez, appeals through counsel an April 17, 1996, decision of the Board of Veterans' Appeals (BVA or Board) denying reopening of a claim for Department of Veterans Affairs (VA) service connection for Meniere's disease and entitlement to VA non-service-connected pension based on permanent and total disability. Record (R.) at 14. The appellant has filed a substantive brief and a reply. The Secretary has filed a motion for affirmance by *single judge* of the reopening claim and remand by single judge of the pension claim. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will grant the Secretary's motion, and affirm the BVA decision as to the reopening claim and vacate it as to the pension claim and remand that matter to the Board for further development and readjudication consistent with this opinion.

## I. Background

The veteran served in the U.S. Army from May 3, 1967, through April 27, 1970. R. at 17. His enlistment examination report (R. at 25–30) noted nondisqualifying defective vision (R. at 26) but no history of dizziness or ear trouble (R. at 28). He dislocated his left shoulder in basic training (R. at 36) and had that shoulder repaired after recurring dislocations (R. at 33, 35–45, 49–53). In 1968, the veteran was treated for dizziness and upset stomach. R. at 141. His 1970 separation examination report included evidence of his shoulder problems but no indication of dizziness or ear trouble. R. at 59–62. That same year, a VA regional office (RO) granted the veteran service connection for a recurrent left-shoulder dislocation and assigned a 20% disability rating. R. at 71. That disability was not before the Board below (R. at 5) and is not part of this appeal, except as to the veteran's total disability rating for pension purposes (*see* Appellant's Brief (Br.) at 7–8, 11–12).

In 1973, the veteran complained of dizzy spells that had begun three years previously (while he was in the Army), and the examiner diagnosed "positional vertigo". R. at 146–47. In 1977, he was diagnosed as having vertigo (R. at 148) and Meniere's disease (R. at 150). Thereafter, he resigned his position as a financial assistant "due to health reasons". R. at 78–79. The veteran, reporting a history of dizziness "since service", was again diagnosed as having vertigo in 1979 (R. at 149) and 1981 (R. at 151–52). (Meniere's disease is "hearing loss, tinnitus, and vertigo

resulting from nonsuppurative [(non-pus-producing)] disease of the [inner ear] labyrinth with the histopathologic feature of endolymphatic hydrops (distention of the membranous labyrinth)"; also called "recurrent aural vertigo". DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 486 (28th ed.1994).)

In 1983 and 1984, VA medical examiners diagnosed tinnitus (R. at 123–27, 153–54, 158) and Meniere's disease (R. at 128, 157). During that same time period, VA medical examiners noted vertigo (R. at 156, 159) and a history of tinnitus and lightheadedness (R. at 128). In 1986, the veteran was treated for "severe dizziness and faintess [sic]" (R. at 140) and vertigo (R. at 160–62), and a VA medical examiner noted then that the veteran complained of "dizzy spells and ringing sensation in the ears since 1968 while in service" (R. at 168).

In March 1987, the veteran filed a request for information on VA non-service-connected disability pension. R. at 528. In July 1987, the VARO rated the veteran 30% disabled due to non-service-connected Meniere's disease and reconfirmed his 20% rating for the service-connected left-shoulder disorder. R. at 184–85, 189. The combination of disabilities was rated at 40% disabling (R. at 185), which did not allow for pension benefits (R. at 187). The veteran filed a timely appeal to the Board as to the Meniere's disease claim; he asserted that the condition had begun during service and had progressively worsened. R. at 199, 192, 240. He submitted medical records dating from 1967 through 1986 showing diagnoses of dizziness, vertigo, and Meniere's disease. R. at 205–35, 489–514. In September 1987, the RO confirmed the July 1987 decision. R. at 238.

In December 1987, the veteran notified the RO that medical records from 1971, 1972, and 1973 were missing and asserted that those records would show continuity of symptoms "since the recruiting period". R. at 242–43. After VA unsuccessfully attempted to find those medical records (R. at 339), the veteran submitted a statement from Dr. Clavell that he had treated the veteran for recurrent vertigo during 1970 and 1971 (R. at 341). The veteran apparently then submit-

ted records of Meniere's disease treatment from 1976 through 1987. R. at 250–332. In September 1988, the RO reviewed the evidence, including Dr. Clavell's statement, and denied service connection for Meniere's disease on the ground that the evidence did not show that the veteran's condition was incurred in service. R. at 344–46. On June 9, 1989, the Board denied service connection for Meniere's disease. R. at 348–52. The appellant filed a Notice of Appeal (NOA) on October 15, 1990, and this Court dismissed that appeal as untimely filed. R. at 395.

In 1991, after submitting records for 1987 through 1991 (R. at 106–10; 354–84)—one noted that the veteran had related a history of "dizziness since 1965" and diagnosed Meniere's disease exacerbated in August 1989 (R. at 108) and another noted "patient with history of tinnitus and recurrent vertigo since 1969" (R. at 378)—the veteran requested reopening of his claim for service connection for Meniere's disease, as well as review of his disability pension claim. R. at 88, 386. He then submitted medical records for 1990 through 1992 (R. at 390–93, 403–23), one of which noted a history of Meniere's disease since 1969 (R. at 410). In June 1992, he filed an "income-net-worth and employment statement" (R. at 426–28), and in October 1992 he received a VA rating examination (R. at 430–36). On January 28, 1993, the RO confirmed the 20% rating for left-shoulder disability; denied service connection for Meniere's disease because there was no evidence of service incurrence or nexus; and assigned a 0% rating for Meniere's disease and a 10% rating for labyrinthine hydrops, allergic in nature, for pension purposes but denied entitlement to pension benefits because the veteran's combined rating was only 30%. R. at 438–43, 445, 447. The veteran timely appealed to the Board. R. at 98, 448–53, 458–62, 544. He noted in a November 10, 1993, letter to the RO that the rating for Meniere's disease had been reduced from the 30% assigned in July 1987 to 0% assigned in January 1993. R. at 100. In the April 17, 1996, BVA decision here on appeal, the Board found that there was no "new and material evidence" to reopen the veteran's claim for service connection for Meniere's disease and denied entitle-

ment to a permanent and total disability rating for pension purposes. R. at 14.

On May 17, 1996, the appellant filed an NOA. Although the appellant in his brief claimed that the Board erred in not applying a continuity-of-symptomatology analysis under 38 C.F.R. § 3.303(b) (1998) to the veteran's service-connection claim for Meniere's disease (Br. at 12), the Secretary failed to address that issue in his motion (*see* March 2, 1998, Motion (Mot.) at 1–2). On May 11, 1998, the Court issued an order directing the Secretary to file a supplementary memorandum addressing the appellant's § 3.303(b) claim, and the Secretary responded (Response at 1).

On June 18, 1998, the appellant entered into a fee agreement with his counsel, Sean Kendall. On November 20, 1998, this Court ordered the appellant to file an amended fee agreement that complied with 38 U.S.C. §§ 5301(a) (prohibiting any assignment or attachment of, or claim of creditors against "[p]ayments of benefits due or to become due ... except to the extent specifically authorized by law") and 5904(d)(3) ("In no event may the Secretary withhold for the purpose of such payment any portion of benefits payable for a period after the date of the final decision of the Secretary, the Board of Veterans' Appeals, or the Court of Appeals for Veterans Claims making (or ordering the making of) the award."). *Vargas–Gonzales v. West*, 12 Vet.App. 63, 64 (1998). On December 30, 1998, the appellant filed a complying amended fee agreement.

## II. Analysis

### A. Claim to Reopen

■ Under the applicable law, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured. *See* 38 U.S.C. §§ 5108, 7104(b), 7105(c); 38 C.F.R. § 3.156(a) (1998). On a claim to reopen, a "three-step analysis" must be conducted under section 5108. *Winters v. West*, 12 Vet. App. 203, 205–207 (1999) (en banc). The first step involves a determination as to whether the evidence presented or secured since the last final disallowance of the claim is new and material. 38 C.F.R. § 3.156(a).

If the BVA determines that the evidence is new and material, the Board must then reopen the claim and determine "whether the appellant's claim, as then reopened, is well grounded in terms of all the evidence in support of the claim, generally presuming the credibility of that evidence". *Elkins v. West*, 12 Vet.App. 209, 218–219 (1999) (en banc); *see also Winters*, 12 Vet.App. at 206. If the claim is not well grounded, that is the end of the matter. "[I]f the claim is well grounded, the Secretary may then proceed to evaluate the merits of the claim [in light of the evidence of record, old and new] but only after ensuring that his duty to assist under 38 U.S.C. § 5107(b) has been fulfilled." *Winters, supra; see also Elkins, supra.* Board determinations as to whether new and material evidence has been presented are generally reviewed under the "clearly erroneous" standard pursuant to 38 U.S.C. § 7261(a)(4), *see Elkins v. West*, 12 Vet.App. at 217–218; thus, if there is a "plausible" basis for such BVA determinations, the Court cannot overturn them. *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

■ In this case, the Board, in finding that there was no new and material evidence to reopen the previously disallowed Meniere's disease claim, cited, inter alia, *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), and appeared to find that certain evidence was "not probative as to the issue of service connection". R. at 9, 11. The concept of "probative" evidence comes from *Colvin*, which the Federal Circuit recently overruled, as to the criteria that *Colvin* had set forth for determining the materiality of newly presented evidence, in *Hodge v. West*, 155 F.3d 1356, 1362 (Fed.Cir.1998). The Federal Circuit concluded there that VA's regulation on reopening, 38 C.F.R. § 3.156(a), was a reasonable interpretation of 38 U.S.C. § 5108 and must govern decisions on whether to reopen previously and finally disallowed claims. *Hodge, supra; see Henderson v. West*, 12 Vet.App. 11, 20–21 (1998). Hence, a remand to apply § 3.156(a) and *Hodge* as to this claim might be seen as justified. *Cf. Elkins*, 12 Vet.App. at 218–219; *Henderson, supra* (remanding matter where Board found that evidence was not material in that it was not

relevant to or probative of pertinent issue). We conclude, however, that such a remand is not warranted when the full context of the above quotation from the BVA decision is examined.

The veteran's complaints of having had symptoms of Meniere's disease, e.g., dizziness and ringing in his ears ("tinnitus" is noise in the ears, such as ringing, DORLAND'S at 1714), since he was in the Army were in the record at the time of the June 1989 final BVA decision disallowing the veteran's Meniere's disease claim, as were at least five diagnoses of Meniere's disease from 1977 to 1987 (R. at 128, 150, 157, 273, 331). The Board identified the evidence presented since that last final disallowance in June 1989 as consisting of "numerous statements of the [veteran] in which he repeats his contentions that he first experienced symptoms consistent with Meniere's disease during military service." R. at 10. The Board then concluded:

> Meniere's disease was first diagnosed in December 1977, a number of years after the appellant left service. Also of record at the time of the Board's June 1989 decision were statements of the appellant in which he contended that he experienced symptomatology consistent with Meniere's syndrome during service.
>
> The Board's June 1989 decision denied service connection for Meniere's syndrome because there was no objective evidence of symptomatology consistent with Meniere's disease during the appellant's military service and no medical evidence which established a connection between Meniere's disease diagnosed in 1977 and the appellant's military service.
>
> Evidence submitted since the Board's June 1989 decision consists of numerous statements of the appellant in which he repeats his contentions that he first experienced symptoms consistent with Meniere's disease during military service. The appellant repeated his contentions to health care providers. For example, he told a VA neurological examiner in July 1990 that he had a history of tinnitus and recurrent vertigo since 1969. During a VA audiology examination and a general VA physical

examination in October 1992, he stated that he had a history of episodic tinnitus and dizziness since 1968.

> After having carefully reviewed the additional evidence, the Board has concluded that it is neither new nor material. The pertinent evidence consists exclusively of reiterations of the appellant's statements that he experienced dizziness and tinnitus during service. Those statements had been considered by the Board in June 1989. Statements made to physicians by the appellant concerning the claimed onset of Meniere's disease *are mere recitations of the appellant's account made elsewhere*, and are not probative as to the issue of service connection for Meniere's disease....

R. at 10–11 (emphasis added). The Court thus concludes that the essence of the Board's determination that new and material evidence had not been presented to reopen the veteran's disallowed Meniere's disease claim was that none of the newly presented evidence—neither the medical records nor the history of Meniere's disease symptoms, back to and before service, related to examiners by the veteran as part of patient histories—was more than "cumulative" of previously presented evidence that was before the Board in 1989 and, hence, was not new; the Board's finding concerning the materiality of the evidence was secondary to its determinative conclusion that the evidence was not new.

The Federal Circuit in *Hodge* dealt with the test for determining whether newly presented evidence is material, but not with the test for determining whether such evidence is new, for purposes of reopening previously and finally disallowed claims. *Hodge*, 155 F.3d at 1360 ("We therefore disapprove of the *Colvin* test ... and remand the case for reconsideration by the court in light of the proper regulatory definition of 'material evidence.'"). More specifically, the Federal Circuit clearly implied in *Hodge* that a decision concerning the materiality of evidence submitted to reopen follows, and is separate from, a decision as to whether the evidence is new. *Hodge*, 155 F.3d at 1360 ("the Court of Appeals for Veterans Claims has consistently

applied this test—the *Colvin* test—in reviewing decision by the Board involving evaluations of new evidence to determine materiality"), 1364 ("we disapprove of the *Colvin* test as an incorrect test to evaluate whether new evidence is material").

Where, as in this case, the Board has determined that newly presented evidence is cumulative of previously considered evidence and thus is not "new" for purposes of reopening a claim, that should end the Board's analysis of whether the evidence is "new and material". *See Smith (Russell) v. West,* 12 Vet.App. 312, 315 (April 7, 1999). Likewise, this Court's review of a Board decision concerning new and material evidence begins with consideration of the Board's conclusion regarding newness. *See Evans (Samuel) v. Brown,* 9 Vet.App. 273, 283 (1996) (new evidence is evidence that was "not of record at the time of the last final disallowance of the claim and [is] not merely cumulative of other evidence that was then of record"). Only if the Board had found that the evidence presented to reopen was new would its determination concerning the materiality of the evidence, based as it was on the now-invalid *Colvin* test for materiality, have raised the question of the need for a remand for readjudication consistent with *Hodge.* *Cf. Elkins,* 12 Vet.App. at 218 (remanding for readjudication under *Hodge* regarding materiality of newly presented evidence); *Winters,* 12 Vet. App. at 207–208 (not remanding for such readjudication because claim was **clearly** not well grounded, thereby rendering remand futile "without possibility of any benefits flowing to the appellant"). Because we hold that the Board's determination that the evidence here was not new was plausible and thus not clearly erroneous, a remand under *Hodge* need not be considered. *See Elkins,* 12 Vet. App. at 217–218; *Gilbert, supra.* Accordingly, the Court will affirm the Board's decision not to reopen as to this claim.

Alternatively, even if we were to conclude that the Board did deny reopening in part because it found that certain newly presented evidence was new but not probative under the invalidated *Colvin* test, a remand under *Hodge, supra,* would still not be required in light of our recent holding in *Winters, supra; see also Elkins,* 12 Vet.App. at 218–219. Rather, under *Winters* we conclude that it is clear that the claim for service connection for Meniere's disease could not be found to be well grounded on remand on the basis of the evidence currently of record, because there is no direct medical evidence of a nexus between the veteran's Meniere's disease and his service. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995) (requiring medical evidence of nexus to service as well as evidence of current disability and evidence of in-service incurrence); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993); *see also Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied sub nom. Epps v. West,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998) (mem.). Likewise, under the continuity-of-symptomatology theory asserted by the appellant under 38 C.F.R. § 3.303(b) and *Savage v. Gober,* 10 Vet.App. 488, 498 (1997), it is clear that, on remand, the Meniere's-disease claim could not be found to be well grounded because the veteran submitted no "competent evidence relat[ing] the present condition to that [asserted postservice] symptomatology", *ibid. Cf. Routen v. West,* 142 F.3d 1434, 1440 (Fed. Cir.) (regulation that creates a new evidentiary rebuttable presumption does not constitute new and material evidence for reopening purposes), *cert. denied,* —— U.S. ——, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998).

### B. Pension Claim

The appellant argues that the BVA decision denying him VA non-service-connected pension based on permanent and total disability is clearly erroneous, or, in the alternative, lacks sufficient reasons or bases as to whether he is employable because there was no combined rating assigned for all of his service-connected and non-service-connected disabilities and because the medical evidence was insufficient for adjudication of the claim. Br. at 8, 11, 12. The Secretary concedes that the Board should not have considered the appellant's total and permanent disability rating without evaluating all of his disorders and should not have made a medical determination without sufficient medical evidence in the record. Mot. at 10.

■ To establish entitlement to VA non-service-connected pension under 38 U.S.C. § 1521, a veteran must (1) have served during a period of war for 90 days or more (or have been discharged or released from service during a period of war for a service-connected disability), (2) be permanently and totally disabled, and (3) have income below a certain standard. 38 U.S.C. § 1521(a), (j); *see also Grantham v. Brown*, 8 Vet.App. 228, 234 (1995), *rev'd in part on other grounds*, 114 F.3d 1156 (1997); *Brown (Clem) v. Derwinski*, 2 Vet.App. 444, 446 (1992); *Roberts v. Derwinski*, 2 Vet.App. 387, 389 (1992). For permanent and total disability, a veteran must demonstrate either that he is "unemployable as a result of a lifetime disability" or, if not unemployable, that he suffers from a lifetime disability that would "render it impossible for the average person with the same disability to follow a substantially gainful occupation". *Brown (Clem)*, 2 Vet.App. at 446; *see also* 38 U.S.C. § 1502(a). Characteristics such as age, education, employment history, and physical and mental disabilities are considered. 38 C.F.R. §§ 3.321, 4.15 (1998). Whether the veteran is entitled to VA pension due to unemployability is a question of fact subject to the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4). *See Cathell v. Brown*, 8 Vet. App. 539, 543 (1996).

■ The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gabrielson v. Brown*, 7 Vet.App. 36, 39–40 (1994); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed.Cir.1996) (table); *Gabrielson,*

*supra; Gilbert, supra.* The Board may consider only independent medical evidence to support its conclusions, and if the evidence of record is not sufficient the Board should supplement the record with an adequate medical evaluation. *See Grantham,* 8 Vet. App. at 235.

■ In the instant case, the veteran's claim for pension is well grounded because he has qualifying wartime service (R. at 17), he has completed the VA pension application as to his income (R. at 426–28), he may have the requisite total disability rating when all of his non-service-connected disabilities are properly evaluated, and as to unemployability there is plausible evidence of record that he has had to resign from jobs due to his health problems (R. at 78–79, 178, 528) and that he receives some state-sponsored assistance (R. at 375). Accordingly, the only element in dispute here is whether the appellant's disabilities cause him to be so totally and permanently disabled as to be unemployable. Br. at 7–8; Mot. at 8–11; R. at 11. In considering that issue in its April 1996 decision, the Board apparently applied the total-and-permanent disability regulations without reevaluating all of the veteran's conditions. R. at 12–13. In both *Grantham* and *Roberts,* this Court remanded pension claims for new rating determinations because the Board had not provided a current evaluation under the rating schedule to determine the impairment percentage for each disability. *Grantham, supra; Roberts,* 2 Vet.App. at 390. In this case, the last evaluation of the veteran's non-service-connected disabilities was in October 1992 and did not cover all of his claimed conditions. R. at 430–36.

In addition, the Board determined that the veteran was employable without sufficient expert evidence in the record; a social worker's statement that the veteran has "declined to pursue employment and vocational rehabilitation opportunities, preferring instead to secure VA pension benefits" (R. at 14; *see also* R. at 12) is not adequate evidence on the question of the degree of disability from all of his conditions and the question of employability. *See Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124 (1991) (BVA evaluation is

not an informed one without a "thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment"); *see also Smith (George) v. Brown*, 8 Vet.App. 546, 553 (1996) (en banc) (Board must provide "medical basis other than its own unsubstantiated conclusions to support its ultimate decision"); *Cathell*, 8 Vet.App. at 544 (although Board may make credibility assessments, it may not support its conclusion with its own unsubstantiated opinion). On remand, therefore, the Board's decision must be based on a detailed medical examination of the veteran to assess his "ability to maintain substantial gainful employment", *Cathell*, 8 Vet.App. at 545; *see Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993).

Finally, the Court notes that the appellant requests reversal on this matter. Br. at 11; Reply at 1–2. However, the record contains neither a current scheduler rating of each of the veteran's disabilities nor a competent evaluation of his employability. Hence, we find that the record is not sufficient on the question of employability to permit effective judicial review. *See Allday, Gabrielson*, and *Gilbert*, all *supra*. Accordingly, the Court cannot reverse but must remand for further development of the evidence. *See Block v. Brown*, 7 Vet.App. 343, 346–47 (1994) (Court had insufficient information to reverse on pension claim where Board did not provide adequate statement of reasons or bases as to unemployability). The Court therefore holds that remand is the proper remedy here.

## C. Miscellaneous

 The Secretary suggests (Response at 4–5) that the appellant's claim that the Board failed to apply § 3.303(b) is really a claim for clear and unmistakable error (CUE) in the Board's June 1989 decision; if so, then the veteran's request to reopen is inapt. *See Flash v. Brown*, 8 Vet.App. 332, 337, 340 (1995) ("claims to reopen and CUE claims are different, mutually exclusive"); *see also* VA Gen. Coun. Prec. 38–97, at 2 (Dec. 17, 1997) (misapplication or failure to apply pertinent law is by definition a CUE claim and claims to reopen and CUE claims are "inherently distinct"). Once a BVA decision is final, it may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. § 7111. In *Russell v. Principi*, the Court defined CUE as follows:

> Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE is] the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.

*Russell v. Principi*, 3 Vet.App. 310, 313–14 (1992) (en banc). A BVA failure to apply a relevant regulation is an appropriate subject for a CUE claim. *Olson v. Brown*, 5 Vet. App. 430, 433 (1993). As a threshold matter, however, a CUE claim cannot be raised for the first time before this Court, and we cannot therefore consider the appellant's possible CUE claim until he obtains a Board decision on such a claim. *See Crowe v. Brown*, 7 Vet.App. 238, 248 (1994); *Sondel v. Brown*, 6 Vet.App. 218, 219–20 (1994); *Russell*, 3 Vet.App. at 314–15.

The appellant requests that the Court establish a schedule for the Secretary to complete development and readjudication on remand in accordance with section 302 of the Veterans' Benefits Improvements Act (VBIA), Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). Reply at 3–4; *see Friscia v. Brown*, 7 Vet.App. 294, 297–98 (1994). The Court is sympathetic with the appellant's concern for prompt action on remand. However, this case does not present the unusual circumstances that warranted special consideration in *Friscia, supra*, and, although VBIA § 302 does require "expeditious treatment" of remanded cases, the appellant has not shown that VA is not complying with that provision, given all the remands that must be processed expeditiously.

## III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the submissions of the parties, the Court affirms the April 17, 1996, BVA decision as to the reopening claim and vacates the decision as to

the pension claim and remands that matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 1521, 7104(a), (b), (d)(1); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with VBIA § 302. *See Allday,* 7 Vet.App. at 533–34. The Secretary's motion is denied. "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claims. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). As proposed by the Secretary, a copy of this opinion will be included in the appellant's claims file for consideration in subsequent decisions on this claim. The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new NOA with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.