Citation Nr: 1434260 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 07-40 325 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to service connection for a bilateral foot disorder.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

S. B. Mays, Counsel


INTRODUCTION

The Veteran had active duty from April 1974 to February 1976. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2007 decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana. 

In November 2008, the Veteran testified before a Decision Review Officer (DRO) sitting at the RO. A copy of the hearing transcript is of record. 

In October 2011 and December 2013, the Board remanded the claim to the Appeals Management Center (AMC) for additional development. 

The Board has merged the issues of entitlement to service connection for right and left foot disorders into one issue, as reflected on the title page of this decision.


FINDINGS OF FACT

1. During service, the Veteran complained of blisters on both feet, and sustained a right foot injury, but symptoms of bilateral foot disorder were not chronic in service or continuous since service separation. 

2. The Veteran's bilateral foot disorder is not causally or etiologically related to his military service, and arthritis of the feet was not exhibited within the first post-service year.

3. The Veteran's bilateral metatarsus adductus is a congenital deformity that was not aggravated by a superimposed disease or injury.




CONCLUSION OF LAW

The criteria for service connection for a bilateral foot disorder are not met. 38 U.S.C.A. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 4.9 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

In this decision, the Board will discuss the relevant law that it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code ("38 U.S.C.A."); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations ("38 C.F.R."); and the precedential rulings of the Court of Appeals for the Federal Circuit (as noted by citations to "Fed. Cir.") and the Court of Appeals for Veterans Claims (as noted by citations to "Vet. App.").

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. See 38 U.S.C.A. § 7104(d); see also 38 C.F.R. § 19.7 (implementing the cited statute); see also Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999); Gilbert v. Derwinski, 1 Vet. App. 49, 56-57 (1990) (the Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction). The Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts.




VA's Duties to Notify and Assist

 Upon receipt and prior to consideration of most applications for VA benefits, VA is tasked with satisfying certain procedural requirements outlined in the Veterans Claims Assistance Act of 2000 (VCAA) and its implementing regulations. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). 

The VCAA and its implementing regulations provide that VA must notify a claimant and his representative, if any, of the information and medical or lay evidence not previously provided to the Secretary that is necessary to substantiate a claim. As part of the notice, VA is to specifically inform the claimant and his representative, if any, of which portion of the evidence the claimant is to provide and which portion of the evidence VA will attempt to obtain on the claimant's behalf. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2013). 

These notice requirements apply to all five elements of a service connection claim, including: (1) veteran status; (2) existence of disability; (3) a connection between service and disability; (4) degree of disability; and (5) effective date of disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 484 (2006). Notice under the VCAA must be provided a claimant prior to an initial unfavorable decision by the agency of original jurisdiction. Pelegrini v. Principi (Pelegrini II), 18 Vet. App. 112, 119-20 (2004).

VA must also assist a claimant in obtaining evidence necessary to substantiate a claim, but such assistance is not required if there is no reasonable possibility that it would aid in substantiating the claim. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159(c) (2013). The United States Court of Appeals for Veterans Claims (Court) has mandated that VA ensure strict compliance with the provisions of the VCAA. Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In this case, the RO provided the Veteran with notice letters dated in January 2007, December 2007, and October 2011, which notified the Veteran of the evidence needed to substantiate the claim, identified the type of evidence that would best do so, notified him of VA's duty to assist and indicated that it was developing his claim pursuant to that duty. The RO also provided the Veteran all necessary information on disability ratings and effective dates. After all notice was provided to the Veteran, the RO readjudicated the claim in a May 2014 supplemental statement of the case. 

All necessary development has been accomplished to the extent possible and, therefore, appellate review of this claim may proceed without unduly prejudicing the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO secured and associated with the claims file the Veteran's STRs, post-service medical records, a DRO hearing transcript, and lay statements.

The RO also provided the Veteran with VA examination of the feet in December 2011. During the VA examination, a medical doctor personally interviewed and examined the Veteran, including eliciting a history from him, conducted clinical testing, reviewed the claims file, and provided an opinion with regard to the etiology of the Veteran's foot complaints. In May 2014, another examiner reviewed the record and provided an addendum which adequately addressed all issues in this case.

The Veteran has not identified, and the record does not otherwise suggest, any additional existing evidence that is necessary for a fair adjudication of this claim that has not been obtained and that is obtainable. In response to the latest SSOC, the Veteran indicated, in May 2014, that he had no additional evidence and asked that his case be sent to the Board immediately. He has received all essential notice, has had a meaningful opportunity to participate effectively in the development of this claim, and is not prejudiced by any notice deficiency. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir., 2004). VA's duties to notify and assist him with this claim have been satisfied.





Pertinent Laws and Regulations Governing Service Connection Claims

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2013). In addition, service connection may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection for a claimed disorder on a direct basis, there must be: (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of the in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

Certain chronic disabilities, to include arthritis, are presumed to have been incurred in or aggravated by service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). 

Under 38 C.F.R. § 3.303(b) , an alternative method of establishing the second and third elements is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease; such diseases are listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As noted, arthritis is among the chronic disabilities listed in 38 C.F.R. § 3.309(a), and may be established as a chronic disease diagnosed in service or on the basis of continuity of symptomatology. Id. However, plantar fasciitis and metatarsus adductus are not considered chronic disabilities.

A Veteran will be considered to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at entrance into service or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. Only such conditions as are recorded in examination reports are to be considered as noted. 38 U.S.C.A. § 1111 (West 2002); 38 C.F.R. § 3.304(b)(2013). Where there is "clear and unmistakable" evidence that the injury or disease claimed pre- existed service and was not aggravated during service, the presumption of soundness does not attach. Id. A preexisting injury or disease will be considered to have been aggravated by service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306. Clear and unmistakable evidence (obvious and manifest) is required to rebut the presumption of aggravation where the pre-service disability underwent an increase in severity during service. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306(b); Falzone v. Brown, 8 Vet. App. 398, 402 (1995).

Congenital or developmental defects are not diseases or injuries within the meaning of applicable legislation pertaining to disability compensation. 38 C.F.R. § 3.303(c) (2013). However, service connection may be granted, in limited circumstances, for disability due to aggravation of a constitutional or developmental abnormality by superimposed disease or injury (see VAOPGCPREC 82-90, 55 Fed. Reg. 45,711 (1990); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); Monroe v. Brown, 4 Vet. App. 513, 514- 15 (1993)). Defects are defined as "structural or inherent abnormalities or conditions which are more or less stationary in nature." VAOPGCPREC 82-90 (July 18, 1990). Congenital or developmental "defects" automatically rebut the presumption of soundness and are therefore considered to have preexisted service. 38 C.F.R. §§ 3.303(c), 4.9 (2013).

The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the Veteran. Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). In doing so, equal weight is not accorded to each piece of evidence in the record as every item of evidence does not have the same probative value. Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert, 1 Vet. App. at 53; see also 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.

Analysis

The Veteran asserts that he has a bilateral foot disorder that is related to his period of military service. He alleges that he was issued boots in the military that were the wrong size and because he had to use them during extensive physical training, including a 12 mile hike while stationed at Fort Knox, this caused permanent damage to his feet. See 2008 DRO hearing transcript. He also indicated that he hit his left foot on a small rock, causing a nail to become imbedded in his boot and ultimately in his heel. See Veteran's letter received in May 2014. 

The Veteran has a current bilateral foot disorder diagnosed as bilateral plantar fasciitis, degenerative arthritis of multiple joints in the feet, and bilateral metatarsus adductus.

Initially, the Board notes that the Veteran's enlistment examination report does not "note" a foot disorder and the Veteran's feet are presumed to have been sound upon service entrance. However, a December 2011 VA examiner explained that the Veteran's bilateral metatarsus adductus is a congenital deformity, and therefore such condition automatically rebuts the presumption of soundness. Nonetheless, the examiner determined that the Veteran's bilateral metatarsus adductus was not subjected to a superimposed injury in service, and specifically stated that the Veteran's congenital deformity was not a result of shoe wear but rather most likely aggravated by his morbid obesity. Service connection for congenital bilateral metatarsus adductus is therefore not warranted.

The Board also finds that the preponderance of the evidence weighs against a finding that the Veteran's bilateral plantar fasciitis and arthritis of the feet are etiologically related to his period of service.
There is evidence of foot complaints in service. A May 1974 STR documents the Veteran's treatment for blisters on both feet. The record also shows that he had a "boot check" and a "spence" insole was added. In addition, a July 1975 STR documents the Veteran's treatment for a right foot injury after playing basketball; the diagnosis was metatarsalgia and X-rays of the foot were negative. 

However, despite this in-service treatment, the weight of the evidence is against a finding that the Veteran experienced chronic symptoms of a bilateral foot disorder during service. Notably, the remaining STRs are negative for any foot complaints or treatment. In addition, on his Report of Medical History completed upon separation from service in January 1976, the Veteran specifically denied having had any foot trouble, and the evaluation of his feet was normal on separation examination, with no diagnosis of a foot disorder rendered. 

The Board affords great probative weight to the Veteran's STRs, particularly the January 1976 separation medical history and examination reports. They are probative both as to the Veteran's subjective reports and their resulting objective findings, and were generated with a view towards ascertaining the Veteran's then-state of physical fitness and are akin to statements of diagnosis or treatment. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (Observing that although formal rules of evidence do not apply before the Board, recourse to the Federal Rules of Evidence may be appropriate if it assists in the articulation of the reasons for the Board's decision); see also LILLY'S: AN INTRODUCTION TO THE LAW OF EVIDENCE, 2nd Ed. (1987), pp. 245-46 (many state jurisdictions, including the federal judiciary and Federal Rule 803(4), expand the hearsay exception for physical conditions to include statements of past physical condition on the rational that statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy since the declarant has a strong motive to tell the truth in order to receive proper care). The Veteran did not experience chronic symptoms of a foot disorder during service. 38 C.F.R. § 3.303(b).

The Board also considered service connection for arthritis of the feet based on continuity of symptomatology because it is considered a chronic disease pursuant to 38 C.F.R. § 3.309(a). However, relevant complaints and treatment are not shown in the record until 1999, approximately twenty-three years after service separation. At that time, the Veteran was treated for right foot pain diagnosed as possible arthritis in the right foot. Thereafter, in a September 2007 letter, dated approximately thirty-one years after service separation, the Veteran's private physician associated with Anderson Family Health Specialists indicated that the Veteran had degenerative changes/arthritis in his feet. X-ray evidence of degenerative arthritis in the feet was not confirmed until the December 2011 VA examination. The absence of post-service complaints, findings, diagnosis, or treatment for many years after service is one factor that tends to weigh against a finding of continuous symptoms after service separation. See Buchanan v. Nicholson, 451 F.3d 1336 (Fed. Cir. 2006) (the lack of contemporaneous medical records is one fact the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible). The medical records are more probative than any lay assertions of continuity of symptomatology, and weigh against a finding of the Veteran having had continuous bilateral foot symptoms since service. Thus, service connection based on continuity of symptomatology pursuant to 38 C.F.R. § 3.303(b) is not warranted.

In addition, as shown above, the first notation of arthritis (in the right foot only and albeit questionable at that time) was in 1999, decades after service separation. There is no indication of any left foot arthritis until 2007. Therefore, arthritis of the feet manifested to a compensable degree within one year of separation from service has not been shown and the presumptions under 38 U.S.C.A. § 1112 and 38 C.F.R. § 3.309 do not apply here.

The record also lacks competent evidence which establishes a relationship between the current bilateral foot disorder and service. In December 2011, a VA medical examination of the feet was performed and the examiner determined that the degenerative arthritis in multiple joints of the feet was less likely than not due to an in-service injury or event. The examiner reasoned that the Veteran's arthritis was more likely related to chronic obesity rather than wearing tight boots in service. The Board notes that obesity is listed on the Veteran's service separation examination report. Ultimately, the December 2011 examiner determined that the Veteran's arthritis in the feet likely developed more recently and not in service.
In addition, a March 2014 VA examiner, also a medical doctor, reviewed the Veteran's claims file and determined that it was less likely than not that the Veteran's bilateral plantar fasciitis was incurred in or caused by an in-service event, injury, or illness. This examiner also reasoned that the Veteran's foot problems, to include plantar fasciitis, are most likely due to his morbid obesity. This examiner also noted the absence of any relevant medical findings or complaints on the Veteran's separation examination and report of medical history reports. The examiner also commented that he had discussed the Veteran's case with the orthopedic physician who examined the Veteran in 2011 and was in agreement with his opinion.

The Veteran, as a layperson, is competent to report on what he sees and feels, such as pain, redness, and swelling in his feet since his in-service physical training. See Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006); Charles v. Principi, 16 Vet. App. 370 (2002). His statements are also credible. In addition, the Veteran's mother and spouse are competent to report foot symptoms of the Veteran that they personally observed. However, the question of whether the Veteran's bilateral foot disorder is related to his service is a complex medical question, not capable of lay observation. See Jandreau, 492 F.3d at 1376 (noting that lay witness capable of diagnosing dislocated shoulder); Barr v. Nicholson, 21 Vet. App. 308 -09 (2007) (finding that lay testimony is competent to establish the presence of varicose veins). Because the evidence does not indicate that the Veteran, his spouse, or mother have the appropriate training, experience, or expertise to provide a medical opinion concerning the Veteran's bilateral foot disorder, they are not competent to comment on the etiology of his bilateral foot disorder. 

Most critically, the Veteran's essential contention of a nexus between his bilateral foot disorder and ill-fitting boots in service has been fully investigated as mandated by the Court's decision in Jandreau. For the reasons and bases discussed above, the most probative evidence indicates that his bilateral foot disorder is less likely than not related to his active service. Although the Veteran is entitled to the benefit of the doubt where the evidence is in approximate balance, the preponderance of the evidence is against this claim and the appeal will be denied.


ORDER


The appeal is denied.


____________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs