Citation Nr: 1602945 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 09-14 183 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to service connection for the removal of a melanoma tumor on the left upper arm, to include as due to Agent Orange exposure. 


REPRESENTATION

Appellant represented by: William C. Herren, Attorney


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Kristi L. Gunn, Counsel

INTRODUCTION

The Veteran served on active duty from June 1966 to October 1969 and from September 1972 to August 1973. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a May 2007 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. Jurisdiction of the case was subsequently transferred to the Muskogee, Oklahoma, RO.

In July 2012, the Veteran testified before a Veterans Law Judge (VLJ) at a travel board hearing. A transcript of the hearing has been associated with the Veteran's electronic file. 

In September 2012, the Board remanded the claim for additional development and adjudicative action. The case has been returned to the Board for further appellate review.

This appeal has been processed entirely electronically using the Veterans Benefits Management System (VBMS).


FINDING OF FACT

The Veteran does not have a current melanoma tumor on the left upper arm and has not at any point since filing his claim. 


CONCLUSION OF LAW

A melanoma tumor on the left upper arm was not incurred in or aggravated by the Veteran's active military service, to include as due to Agent Orange exposure. 38 U.S.C.A. §§ 1110, 1112, 1116, 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.307. 3.309 (2015).
REASONS AND BASES FOR FINDING AND CONCLUSION

In this decision, the Board will discuss the relevant law it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code ("38 U.S.C.A."); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations ("38 C.F.R."); and the precedential rulings of the Court of Appeals for the Federal Circuit (as noted by citations to "Fed. Cir.") and the Court of Appeals for Veterans Claims (as noted by citations to "Vet. App."). 

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. 38 U.S.C.A. § 7104(d); see also 38 C.F.R. § 19.7 (implementing the cited statute); Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999); Gilbert v. Derwinski, 1 Vet. App. 49, 56-57 (1990) (Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction; the Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts). 

VA's Duty to Notify and Assist

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159 (2015). The VCAA notice requirements apply to all elements of a claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Veteran was provided with the relevant notice and information in a September 2006 letter prior to the initial adjudication of his claim. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). The RO advised the claimant by the letter of the elements of service connection and informed him of his and VA's respective responsibilities for obtaining relevant records and other evidence in support of his claim. For these reasons, VA has satisfied its duty to notify. 

VA's duty to assist under the VCAA includes helping claimants to obtain service treatment records (STRs) and other pertinent records, including private medical records (PMRs). See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The claims file contains the Veteran's STRs and VA outpatient treatment records. The duty to obtain relevant records is satisfied. See 38 C.F.R. § 3.159(c). 

VA's duty to assist also includes providing a medical examination and/or obtaining a medical opinion when necessary to make a decision on the claim, as defined by law. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79 (2006). VA is not required to provide a medical examination or obtain a medical opinion to decide this claim. An examination is required when (1) there is evidence of a current disability, (2) evidence establishing an "in-service event, injury or disease" or that a disease manifested either in accordance with presumptive service connection regulations or as a result of a service-connected disability, (3) an indication that the current disability may be related to the in-service event or service-connected disability, and (4) insufficient evidence to decide the case. McLendon, 20 Vet. App. at 83. The standards of McLendon are not met in this case. The Veteran has evidence of in-service herbicide exposure; however, there is no medical evidence of a current disability, and the evidence of record does not suggest that his claimed melanoma tumor is otherwise related to service. Thus, the first and the third McLendon elements are not satisfied and, therefore, a VA examination is not required to decide this claim. See McLendon, 20 Vet. App. at 83.

The RO substantially complied with the Board's July 2012 remand directives. Stegall v. West, 11 Vet. App. 268, 271 (1998). See also D'Aries v. Peake, 22 Vet. App. 97 (2008) (finding that only substantial compliance, rather than strict compliance, with the terms of a Board engagement letter requesting a medical opinion is required). The RO reviewed the additional evidence submitted by the Veteran at the July 2012 Board hearing, and attempted to obtain records from the Social Security Administration (SSA). In an October 2012 VA memorandum, it was determined that the Veteran's SSA records had been destroyed. In October 2014, the Veteran submitted SSA records that were in his possession. The RO has substantially complied with the Board's instructions. In summary, the duty to assist has been met. 38 U.S.C.A. § 5103A (West 2014).

Finally, as already alluded to, the Veteran also testified at a travel board hearing before the Board. The hearing was in compliance with proper procedure as the presiding VLJ, the undersigned, explained the issue, focused on the elements necessary to substantiate the claim, and sought to identify any further development that was required to help substantiate the claim. Neither the Veteran nor his attorney has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor have they identified any prejudice in the conducting of the hearing. Bryant v. Shinseki, 23 Vet. App. 488 (2010).

The Veteran has not made the RO or the Board aware of any additional evidence that must be obtained in order to fairly decide the appeal. He has been given ample opportunity to present evidence and argument in support of his claim. Pursuant to 38 C.F.R. § 3.655, all relevant evidence necessary for an equitable disposition of the Veteran's appeal of this issue has been obtained and the case is ready for appellate review. General due process considerations have been complied with by VA. See 38 C.F.R. § 3.103 (2015).

The Merits of the Service Connection Claim

Service connection may be established for disability resulting from personal injury or disease contracted in line of duty, or for aggravation of a pre-existing injury suffered or disease contracted in line of duty. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2014). Service connection may be granted for any disease diagnosed after discharge from service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

A three-element test must be satisfied in order to establish entitlement to service connection. Specifically, the evidence must show (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service (the "nexus" requirement). Walker v. Shinseki, 708 F.3d 1331, 1333 (Fed. Cir. 2013) (citing Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009). 

Under 38 C.F.R. § 3.303(b), claims for certain chronic diseases-namely those listed in 38 C.F.R. § 3.309(a) - benefit from a somewhat more relaxed evidentiary standard. See Walker, 708 F.3d at 1339 (holding that "[t]he clear purpose of the regulation is to relax the requirements of § 3.303(a) for establishing service connection for certain chronic diseases."). When a chronic disease is established during active service, then subsequent manifestations of the same chronic disease at any later date, however remote, will be entitled to service connection, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). In order to establish the existence of a chronic disease in service, the evidence must show a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Id. Thus, the mere manifestation during service of potentially relevant symptoms (such as joint pain or abnormal heart action in claims for arthritis or heart disease, for example) does not establish a chronic disease at that time unless the identity of the disease is established and its chronicity may not be legitimately questioned. Id. If chronicity in service is not established, then a showing of continuity of symptoms after discharge is required to support the claim. Id. 

Not all diseases that may be considered "chronic" from a medical standpoint qualify for the relaxed evidentiary standard under section 3.303(b). Rather, the Federal Circuit held that this subsection only applies to the specific chronic diseases listed in 38 C.F.R. § 3.309(a). Walker, 708 F.3d at 1338. Thus, if the claimant does not have one of the chronic diseases enumerated in section 3.309(a), then the more relaxed continuity-of-symptomatology standard does not apply, and the "nexus" requirement of the three-element test must be met. Id. at 1338-39. 

Malignant melanoma (as malignant tumors) is a chronic disease listed in section 3.309(a); therefore, the provisions of subsection 3.303(b) for chronic disabilities apply. Walker, 708 F.3d at 1338. 

Service connection can be granted for certain diseases, including malignant melanoma (as malignant tumors), if manifest to a degree of 10 percent or more within one year of separation from active service. Such diseases shall be presumed to have been incurred in service even though there is no evidence of disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

Veterans who served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975 shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii). 

VA regulations provide that if a veteran was exposed to an herbicide agent during active military, naval, or air service, the following diseases shall be service connected if the requirements of 38 C.F.R. § 3.307(a) are met, even if there is no record of such disease during service: AL amyloidosis, chloracne or other acneform disease consistent with chloracne; type 2 diabetes (also known as Type II diabetes mellitus); Hodgkin's disease; chronic lymphocytic leukemia (CLL); multiple myeloma; Non-Hodgkin's lymphoma; acute and subacute peripheral neuropathy; porphyria cutanea tarda; prostate cancer; respiratory cancers (cancer of the lung, bronchus, larynx or trachea); soft tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma), chronic B-cell leukemias, Parkinson's disease, and ischemic heart disease. 38 C.F.R. § 3.309(e).

Notwithstanding the presumption, service connection for a disability claimed as due to exposure to herbicides may be established by showing that a disorder resulting in disability or death was in fact causally linked to such exposure. See Brock v. Brown, 10 Vet. App. 155, 162-64 (1997); Combee, 34 F. 3d at 1044.

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). Generally, the Board first determines whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303 (2007). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record. 

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159. Lay evidence may be competent and sufficient to establish a diagnosis of a condition when: (1) a layperson is competent to identify the medical condition (i.e., when the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer); (2) the layperson is reporting a contemporaneous medical diagnosis, or; (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). 

In ascertaining the competency of lay evidence, the Courts have generally held that a layperson is not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183 (1997). In certain instances, however, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See, e.g., Barr v. Nicholson, 21 Vet. App. 303 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398 (1995) (flatfeet). Laypersons have also been found to not be competent to provide evidence in more complex medical situations. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (concerning rheumatic fever). 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). 

After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this function, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-512 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table); see Madden v. Brown, 125 F.3d 1447 (Fed Cir. 1997) (holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). 

The standard of proof to be applied in decisions on claims for veterans' benefits is set forth in 38 U.S.C.A. § 5107 (West 2014). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102. When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996).

The Veteran contends that service connection is warranted for removal of a melanoma tumor on the left upper arm. At the July 2012 Board hearing, the Veteran testified that during his military service, he traveled to Da Nang, Vietnam, on a temporary duty assignment for approximately twenty days. He explained that during his assignment to Da Nang, he was exposed to Agent Orange. The Veteran stated that the exposure to Agent Orange caused him to develop a melanoma tumor in the left upper arm, which ultimately had to be removed. See the July 2012 Board hearing transcript. The Veteran asserts that his melanoma tumor of the left upper arm is attributable to his military service. 

Service treatment records reflect no complaints, treatment, or a diagnosis of a melanoma tumor. Upon discharge from his first period of service, clinical evaluation testing of the skin was normal, as reflected on the October 1969 report of medical examination. More importantly, there is no evidence of a current diagnosis of a melanoma tumor of the left upper arm. Review of the Veteran's post service treatment records shows no specific evidence of the melanoma tumor being removed from his left arm. However, a December 2005 VA pathology report reflects the presence of a residual tumor that could not be assessed. Thereafter, a February 2006 VA primary care follow-up note lists "melanoma in situ" as a medical problem. At a December 2007 VA primary care follow-up visit, the examiner noted the presence of a healed scar to the right bicep, consistent with melanoma excision. He was assessed with a history of melanoma. Based on the evidence described above, it is safe to assume that the resection of the melanoma tumor occurred sometime between December 2005 and prior to his claim in August 2006. Thereafter, VA outpatient treatment records from December 2007 to February 2014, list malignant melanoma status post resection under past medical history. The Veteran's medical records do not reveal any recurrence of the melanoma or additional cancerous skin sites. There is also no indication of melanoma residuals, except a scar that has been noted as being healed and not to be painful, unstable, or productive of any functional incapacity.

The Veteran filed his claim in August 2006. Given that the Veteran's melanoma was completely excised prior to the filing of his current claim and the record fails to reveal any residual disability or recurrence of melanoma since that time, the Veteran does not have a current disability for which an award of service connection can be made. Where, however, the record contains a recent diagnosis of disability prior to a veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency. Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). A determination that a diagnosis is "sufficiently proximate to the filing of a claim so as to constitute evidence of a 'current diagnosis' is a factual finding to be made by the Board in the first instance." Romanowsky, 26 Vet. App. 289.

While there is evidence that a melanoma was found sometime between December 2005 and August 2006, prior to submission of the claim, there is no medical evidence of the melanoma after the resection, particularly after the date of claim. In fact, the Veteran admitted at the July 2012 Board hearing that after removal of the melanoma tumor, he has use of the arm and the issue resolved satisfactorily. He further admitted to not receiving any follow-up skin care treatment as well. See the Board hearing transcript, p. 11.

The threshold question in any claim seeking service connection is whether the Veteran, in fact, has the disability for which service connection is sought. The probative evidence of record weighs against a finding of melanoma or a residual thereof diagnosed during the pendency of the Veteran's claim. The claim of service connection for such must be denied as the evidence fails to establish the presence of a current disability. In the absence of proof of a current disability, service connection is not warranted. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 143-44.

Moreover, even if it were accepted that a single incurrence of melanoma is sufficient to establish a chronic disability for VA purposes, due to the possibility of recurrence, the fact remains that the weight of the evidence is against a finding that such a disability warrants service connection.

The Veteran is competent to report perceived symptoms, such as pain, but he is not competent to determine the etiology of those symptoms or self diagnose the presence of a residual disorder in this circumstance. See Jandreau v. Nicholson, 492 F.3d. 1372 (Fed. Cir. 2007) (holding that some disabilities are not capable of lay observation). The evidence of record shows that the Veteran does not have a diagnosed melanoma tumor on the left upper arm that is a result of his military service, to include Agent Orange exposure. 

The preponderance of the evidence is against the Veteran's claim for the removal of a melanoma tumor on the left upper arm, to include as due to Agent Orange exposure, and the benefit-of-the doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b) (2015). Thus, the claim will be denied. 


ORDER

Service connection for the removal of a melanoma tumor on the left upper arm, to include as due to Agent Orange exposure, is denied. 



____________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs