Citation Nr: 1536775 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 10-45 045 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a bilateral knee disability. 

2. Entitlement to service connection for a bilateral wrist (also claimed as hand) disability.

3. Entitlement to service connection for residuals of a head injury with memory loss.


ATTORNEY FOR THE BOARD

S. B. Mays, Counsel






INTRODUCTION

The Veteran served on active duty from August 1981 to January 1985. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. 

The Veteran requested a Central Office Board hearing in Washington, D.C. See November 2010 substantive appeal. Subsequently, the RO sent a February 2011 appeals notification letter (i.e., a letter notifying the Veteran that the Board received his appeal) to the Veteran's home address of record, but the letter was returned to the RO as undeliverable (notations from the U.S. Postal Service included "return to sender," "attempted - not known," and "unable to forward"). Thereafter, an August 2011 letter from the Board informing the Veteran of his October 2011 Central Office hearing was likewise returned by the U.S. Postal Service as undeliverable. The Veteran did not report to the October 2011 hearing. Subsequent notations in VA's Veterans Appeals Contact and Locator System (VACOLS) system reflect that the Veteran was rescheduled for a Central Office hearing in October 2013 but he "cancelled" his hearing. His hearing request has therefore been withdrawn.

In March 2014, the Board reopened a previously denied service connection claim for a bilateral knee disability, and remanded for further development the reopened knee claim, as well as the service connection claims for bilateral wrist disability and head injury with memory loss.

In January 2015, the Board remanded the appeal again for even further development. In March 2015 correspondence, the AOJ told the Veteran that he did not have a recognized service organization representing him in this matter. The Agency of Original Jurisdiction (AOJ) advised the Veteran that the VA Medical Center in Birmingham, Alabama, which he wished to represent him (see the Veteran's VA Form 21-22, received in June 2014) is not a recognized service organization. The AOJ enclosed an additional VA From 21-22 for the Veteran to complete, if he wished. To date, there is no valid VA Form 21-22 on file. Therefore, the Board finds that the Veteran wishes to represent himself in this appeal.

The case has since returned to the Board for further appellate consideration.


FINDINGS OF FACT

1. The competent and probative evidence is against a finding that the Veteran's currently diagnosed bilateral knee and wrist disabilities had their onset in service or are otherwise related to active duty; arthritis of the knees and wrists was not exhibited within the first post-service year and symptoms of arthritis have not been continuous since service separation.

2. The Veteran does not have a current disability related to an in-service head injury with memory loss.


CONCLUSIONS OF LAW

1. The criteria for service connection for a bilateral knee disability are not met. 38 U.S.C.A. §§ 1112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015). 

2. The criteria for service connection for a bilateral wrist disability are not met. 38 U.S.C.A. §§ 1112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015). 

3. The criteria for service connection for residual disability of a head injury with memory loss are not met. 38 U.S.C.A. §§ 1131, 5107(b) (West 2014); 38 C.F.R. § 3.303 (2015).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Introductory Matters

In this decision, the Board will discuss the relevant law, which it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code ("38 U.S.C.A."); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations ("38 C.F.R.") and the precedential rulings of the United States Court of Appeals for the Federal Circuit (Federal Circuit) (as noted by citations to "Fed. Cir.") and the United States Court of Appeals for Veterans Claims (Court) (as noted by citations to "Vet. App."). 

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. 38 U.S.C.A. § 7104(d) (West 2014); see also 38 C.F.R. § 19.7 (2015) (implementing the cited statute); see also Vargas-Gonzalez v. West, 12 Vet. App. 321, 328(1999); Gilbert v. Derwinski, 1 Vet. App. 49, 56-57 (1990) (the Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the appellant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction. The Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts).


II. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

The United States Court of Appeals for Veterans Claims (Court) has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

Pre-adjudicatory VCAA notice letters were sent to the Veteran in July 2009 and January 2010. Collectively, these letters apprised the Veteran of the type of evidence and information needed to substantiate his service connection claims, and of his and VA's respective responsibilities in obtaining this supporting evidence. The AOJ also advised him as to how disability ratings and effective dates are assigned. Additional VCAA notice letters were sent to him in May 2014, March 2015, and May 2015. Thereafter, the appeal was most recently readjudicated by way of a June 2015 supplemental statement of the case (SSOC). In response to this SSOC, the Veteran indicated that he had no additional evidence regarding his appeal and asked that his case be sent immediately to the Board. See June 2015 SSOC Response Form.

VA's duty to assist includes assisting him in obtaining his service treatment records (STRs) and pertinent post-service treatment records (VA) and providing an examination when needed to assist in deciding the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2015). 

All necessary development has been accomplished to the extent possible and, therefore, appellate review of this claim may proceed without unduly prejudicing the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). Here, the Veteran's STRs; service personnel records; post-service medical evidence; and statements in support of the claim are associated with the claims file. The Veteran was afforded June 2014 VA examinations to assist in determining the nature and etiology of his bilateral knee and wrist disabilities. Pursuant to the 2015 remand, the AOJ obtained ongoing VA treatment records, and obtained March 2015 supplemental opinions. 38 U.S.C.A. § 5103A (d)(2); 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79 (2006). Also, because the STRS showed no December 1984 knee treatment from the Marine Corps Base Hawaii (MCBH) at Kaneohe Bay, the AOJ made a specific request for any clinical records from MCBH. However, in April 2015, the National Personnel Records Center (NPRC) indicated that its investigation resulted in no clinical records to support the Veteran's allegations regarding in-service knee treatment. Thereafter, the May 2015 notice letter informed the Veteran of the efforts made to obtain the identified knee records, but indicated that none were found. The AOJ advised the Veteran to submit any supportive evidence in his possession, but he did not identify or submit any additional evidence pertinent to his claims on appeal. 

A VA examination was not provided to the Veteran in connection with his claim for residuals of a head injury with memory loss. As will be discussed in further detail below, the threshold requirement of showing that the Veteran has the claimed disability during the pendency of this appeal is not met; therefore an examination is not warranted. 38 U.S.C.A. § 5103A (d) (West 2014); 38 C.F.R. § 3.159(c)(4) (2015). 

Moreover, there is no "indication" linking any possible current disability to the Veteran's service. The Court of Appeals for Veterans Claims has stated that at least one element required to get an examination obtained establishes a low threshold and requires only that the evidence "indicates" that there "may" be a nexus between the current disability or symptoms and the veteran's service. The types of evidence that "indicates" that a current disability "may be associated" with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). In addition, in Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010) and Colantonio v. Shinseki, 606 F.3d 1378 (Fed. Cir. 2010), the Federal Circuit held that while there must be "medically competent" evidence of a current disability, "medically competent" evidence is not required to indicate that the current disability may be associated with service. Colantonio, 606 F.3d at 1382 ; Waters, 601 F.3d at 1277. On the other hand, a conclusory generalized lay statement suggesting a nexus between a current disability and service would not suffice to meet the standard of subsection (B), as this would, contrary to the intent of Congress, result in medical examinations being "routinely and virtually automatically" provided to all veterans claiming service connection. Waters, 601 F.3d at 1278-1279. Therefore, given the evidence of record in this case, the duty to assist to provide an examination for residuals of a head injury with memory loss is not triggered. 

The Veteran has not identified, and the record does not otherwise suggest, any additional existing evidence that is necessary for a fair adjudication of this claim that has not been obtained and that is obtainable. He has received all essential notice, has had a meaningful opportunity to participate effectively in the development of this claim, and is not prejudiced by any technical notice deficiency along the way. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). VA's duties to notify and assist him with this claim have been satisfied.


III. Pertinent Service Connection Laws and Regulations

Service connection may be granted for a disability resulting from disease or injury Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). In addition, service connection may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

In order to establish service connection for a claimed disorder on a direct basis, there must be: (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of the in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). 

The requirement of a current disability is "satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim." See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

The Veteran is currently diagnosed with degenerative joint disease (i.e., arthritis) in each knee and wrist. Arthritis is considered a "chronic disease" listed under 38 C.F.R. § 3.309(a), therefore the presumptive service connection provisions under 38 C.F.R. § 3.303(b) for service connection based on "chronic" symptoms in service and "continuous" symptoms since service are applicable. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. § 3.303(b). 

Where a veteran served ninety days or more of active service, and certain chronic diseases, such as arthritis, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Service connection may also be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury which was incurred in or aggravated by service. 38 C.F.R. § 3.303(d). 

Lay evidence may be competent and sufficient evidence of a diagnosis or nexus if (1) the particular condition at issue is the type of condition that is within the competence or common knowledge of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also Kahana, 24 Vet. App. at 433, n.4. 

A veteran bears the evidentiary burden to establish all elements of a service connection claim, including the nexus requirement. Fagan v. Shinseki, 573 F.3d 1282, 1287-88 (2009); see also Walker v. Shinseki, 708 F.3d 1331, 1334 (Fed. Cir. 2013). However, in making its ultimate determination, the Board will give a veteran the benefit of the doubt on any issue material to the claim when there is an approximate balance of positive and negative evidence. Fagan, 573 F.3d at 1287 (quoting 38 U.S.C. § 5107(b)).

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498 (1995).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).


A. Service Connection Claims for Bilateral Knee Disability

The medical evidence demonstrates that the Veteran is currently diagnosed with 
degenerative joint disease of both knees as evidenced by May 2009 VA x-ray reports.

The Veteran asserts that his current bilateral knee disability is related to an in-service injury. Specifically, he maintains that he injured both knees while playing football at a Marine base in Hawaii in approximately December 1984, and received treatment at the MCBH at Kaneohe Bay. He was reportedly on crutches for six months. See April 2010 Notice of Disagreement.

As indicated however, the Veteran's STRs however show no evidence of any knee complaints, treatment, or diagnoses, and no evidence of the knee injury described by the Veteran. Unfortunately, efforts to secure any relevant December 1984 treatment and/or clinical records from MCBH were unsuccessful. 

Moreover, the first evidence of knee complaints is first shown approximately six years after service discharge in October 1991, at which time the Veteran presented to a VA clinic with reports of bilateral knee pain. Although the absence of any complaints or symptoms after service is not dispositive, the fact of this chronology must be considered as it bears upon the question of nexus between the Veteran's claimed disabilities resulting from service and his current diagnosis. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000) (a lengthy period without complaint or treatment is evidence that there has not been a continuity of symptomatology, and can weigh against the claim).

Moreover, the record lacks competent and probative evidence of a nexus between the current bilateral knee disability and service. After examining the Veteran and reviewing the claims file, the June 2014 VA medical examiner determined that the current bilateral knee disability is less likely as not related to his military service. The examiner reasoned that the records do not indicate any significant knee complaints in service. In the March 2015 addendum, the same examiner re-reviewed the claims file and stated that her prior June 2014 medical opinion remained unchanged. The examiner again acknowledged the Veteran's report of a "severe" knee strain in service as well as the October 1991 VA medical certificate showing a history of bilateral knee pain. Notwithstanding, as noted by the examiner, examination and x-rays of both knees in October 1991 were within normal limits, and the next knee complaints are not demonstrated until many years later in 2009. Ultimately, the VA examiner concluded that the Veteran's bilateral knee arthritis is more likely related to the normal aging process, and less likely related to the claimed bilateral knee injury in service. 

The Board assigns the June 2014 VA opinion with March 2015 supplemental opinion great probative weight. In arriving at the opinion that the right and left knee disabilities are less likely related to service, the examiner examined the Veteran, had the benefit of reviewing the entire claims file twice, and presented a clear rationale. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). The examiner considered both the lay and medical evidence, but still found no link to service.

The Veteran, as a lay person, is competent to report past and current knee symptoms; however, he is not competent to diagnose arthritis or render a competent medical opinion regarding its etiology under the specific facts of this case. Arthritis is a complex disease process that involves unseen systems processes that are not observable by the five senses of a lay person. There are various possible etiologies of arthritis, only one of which involves trauma to a joint. Arthritis is diagnosable only by x-ray or similar specific specialized clinical testing. For these reasons, the Veteran is not competent to diagnose arthritis or to provide an opinion as to the etiology of his arthritis in his knees. Such opinion as to diagnosis and causation involve making findings based on history, complaints and symptoms, signs, medical knowledge, and clinical testing results; therefore, the Veteran's lay opinion is of little probative value. 

In addition, arthritis of the knees was not manifested (to any degree) during the first post-service year. In fact, the first x-ray evidence of arthritis of the knees is not shown until 2009, which is more than two decades after service discharge. Accordingly, the legal authority governing presumptive service connection for arthritis as a chronic disease is not for application. See 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

Service connection for the Veteran's bilateral knee disability based on chronicity or continuity of symptomatology is for consideration, as arthritis is a chronic disease listed in 38 C.F.R. § 3.309(a). However, neither chronicity nor continuity of symptomatology is demonstrated. To the contrary, as indicated, despite the Veteran's assertions, there is no evidence of any knee injury, treatment, or diagnoses in the STRs. Thus, the preponderance of the evidence therefore demonstrates that the Veteran did not experience chronic symptoms of a bilateral knee disability in service. 38 C.F.R. § 3.303(b).

In addition, as noted, the first evidence of knee complaints is not shown until October 1991. At that time, the Veteran did report having injured his knees while playing football in service. However, even considering that report, knee complaints are not shown again until 2009, approximately 18 years later. The medical evidence is of greater probative value than the Veteran's unsupported lay assertions of symptoms since service. Accordingly, the preponderance of the evidence demonstrates that the Veteran did not experience continuous knee symptoms since he was discharged from service in 1985. 

For the reasons discussed above, the Board finds that the preponderance of the evidence demonstrates that the Veteran's degenerative arthritis in the knees was not incurred in or otherwise caused by active service, and may not be presumed to have been incurred therein. Although the Board is appreciative of the Veteran's service to our country, given the record before it, the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and the claims must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


B. Service Connection Claim for Bilateral Wrist Disability

The medical evidence demonstrates that the Veteran has a current bilateral wrist disability diagnosed as degenerative joint disease, as evidenced by March 2009 and April 2009 VA x-ray reports.

The Veteran asserts that his current bilateral wrist disability is related to his military occupational specialty (MOS) duties and physical training caused bilateral wrist pain during service. He states that, while attached to the motor transport unit, he routinely drove trucks 10 hours a day, 5 days a week and that the excessive driving caused pain/injury to both wrists. Also, he indicates that his wrists became painful during boot camp while performing push-ups and other physical exercises. See November 2009 Veteran Statement; February 2010 Veteran Statement. 

However, his STRs are completely devoid of any wrist complaints, treatment, and/or diagnoses. The first evidence of any wrist complaints is not shown until 2009 when the Veteran had x-rays taken due to complaints of wrist pain. 

Moreover, the record lacks competent and probative evidence of a nexus between the current bilateral wrist disability and service. After examining the Veteran, the June 2014 VA medical examiner determined that the current bilateral wrist disability is less likely as not related to his military service, reasoning that the records do not indicate any significant hand injury or complaints in service. In the May 2015 supplemental opinion, the examiner re-affirmed her prior opinion, noting that even given the added history, her 2014 opinion remained unchanged. In assessing the etiology of the Veteran's wrist disability, the examiner recognized the Veteran's contentions regarding developing wrist problems secondary to his MOS duties and his reports of continuing wrist symptom since service, but concluded that the Veteran's current wrist symptoms are most likely not related to his military service given the absence of wrist problems in service and for decades later.

The Board assigns the June 2014 VA opinion with March 2015 supplemental opinion great probative weight. In arriving at the opinion that the right and left knee disabilities are less likely related to service, the examiner examined the Veteran, had the benefit of reviewing the entire claims file, and presented a clear rationale. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

As indicated above, the Veteran, as a lay person, is competent to report past and current observable symptoms such as pain, but is not competent to diagnose arthritis or render a competent medical opinion regarding its etiology for the same reasons as expressed above. Therefore, the Veteran's lay opinion as to etiology is of little probative value. 

In addition, there is no medical evidence that arthritis of the wrists was manifested (to any degree) during the first post-service year. X-ray evidence of arthritis of the wrists is first demonstrated in x-rays taken in 2009, more than two decades after service discharge. Accordingly, the legal authority governing presumptive service connection for arthritis as a chronic disease is not for application. See 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

Service connection for the Veteran's bilateral wrist disability based on chronicity or continuity of symptomatology is for consideration, as arthritis is a chronic disease listed in 38 C.F.R. § 3.309(a). However, neither chronicity nor continuity of symptomatology is demonstrated. To the contrary, as indicated, there is no evidence of any wrist complaints or treatment in the STRs; therefore, the Board concludes that the Veteran did not experience chronic symptoms of a bilateral wrist disability in service. 38 C.F.R. § 3.303(b).

In addition, the evidence demonstrates that the Veteran did not experience continuous wrist symptoms since he was discharged from service in 1985. Again, the first indication of wrist symptoms is noted in a 2009 x-ray report. The Veteran's lay assertions of continuing wrist symptoms since service discharge in 1985 are not supported by the record. 

For the reasons discussed above, the Board finds that the preponderance of the evidence demonstrates that the Veteran's degenerative arthritis in the wrists was not incurred in or otherwise caused by active service, and may not be presumed to have been incurred therein. Although the Board is appreciative of the Veteran's service to our country, given the record before it, the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and the claims must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


C. Service Connection Claim for Residuals of a Head Injury with Memory Loss

The Veteran also maintains that while repairing a truck during service, he fell and hit his head on the truck's bumper. He was reportedly unconscious for a short period of time and received 4-6 stitches above his left eye. He maintains that he has memory loss as a result of this injury. See April 2010 Notice of Disagreement. 

"Congress specifically limits entitlement to service-connected disease or injury where such cases have resulted in a disability. In the absence of a proof of present disability there can be no claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992)(citation omitted). The requirement of a "current disability" is satisfied if a disorder is diagnosed at the time a claim is filed or at any time during the pendency of the appeal; service connection may be awarded even though the disability resolves prior to adjudication of the claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). The standard is whether a disability existed at the time the claim was filed. See Romanowsky v. Shinseki, 26 Vet. App. 289, 293 (2013).

In this case, the threshold element of a service connection claim has not been met. Notably, the Veteran has not been diagnosed with any residuals of a head injury with memory loss by a medical professional since the filing of the claim mand throughout the appeal period. Further, he has not provided lay evidence identifying treatment or diagnoses related to his claimed in-service head injury, nor has any treatment for residuals of a head injury been identified in his treatment records. 

As the Veteran has not presented competent evidence showing that he currently has residuals of a head injury with memory loss, the claim must be denied. See 38 U.S.C. § 5107(a) ("[A] claimant has the responsibility to present and support a claim for benefits."); Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009) (holding that it is the claimant's general evidentiary burden to establish all elements of the claim). 

The Board recognizes that, although the Veteran is competent to relate some symptoms that may be associated with memory loss, he does not have the requisite medical knowledge, training, or experience to be able to diagnose the medically complex disorders of residuals of a head injury, to include memory loss disorders. See Kahana v. Shinseki, 24 Vet. App. 428, 437 (2011) (recognizing ACL injury is a medically complex disorder that requires a medical opinion to diagnose and to relate to service or differentiate from in-service symptoms and diagnosis). Residuals of a head injury, to include memory loss, include medically complex disorders with complicated and sometimes unknown physical and/or psychiatric etiologies. Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (holding that rheumatic fever is not a condition capable of lay diagnosis). In this case, the Veteran is not shown to have the knowledge, training, or experience to render a diagnosis relating to residual disabilities of an in-service head injury, to include memory loss. See the American Psychiatric Association Diagnostic and Statistical Manual for Mental Disorders, 4th ed (DSM-IV), Cautionary Statement ("specialized clinical training" is required to make DSM-IV code psychiatric diagnoses). 

Because there is no evidence of a current disability, the service connection claim must be denied. In making this determination, the Board has considered the provisions of 38 U.S.C.A. § 5107(b) regarding benefit of the doubt, but there is not such a state of equipoise of positive and negative evidence to otherwise grant the Veteran's claim.
ORDER

Service connection for a bilateral knee disability is denied.

Service connection for a bilateral wrist disability is denied.

Service connection for residuals of a head injury with memory loss is denied.



____________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs