Citation Nr: 1602923 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 12-22 632 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an initial rating in excess of 70 percent for posttraumatic stress disorder.

2. Entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU).


ATTORNEY FOR THE BOARD

A. Hemphill, Associate Counsel


 
INTRODUCTION

The Veteran served on active duty from August 1966 to August 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

In October 2014, the Board remanded the claim for additional development and adjudicative action. The case has been returned to the Board for further appellate review.

This appeal has been processed entirely electronically using the Veterans Benefits Management System (VBMS).


FINDINGS OF FACT

1. The Veteran's PTSD has been manifested by occupational and social impairment, with deficiencies in areas such as thinking and mood, with no evidence of total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene; or disorientation to time and place, memory loss for names of close relatives, own occupation, or own name.

2. The Veteran is not unable to secure and follow substantially gainful employment as a result of his service connected disabilities, which currently include PTSD, rated at 70 percent disabling; residual scars of the left arm, rated at 20 percent disabling; residual scars of the right arm, rated at 20 percent disabling; diabetes mellitus rated at 20 percent disabling; and eczema, rated at 10 percent disabling.


CONCLUSION OF LAW

1. The criteria for a rating in excess of 70 percent for PTSD have not been met or approximated. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.3, 4.130, Diagnostic Code 9411 (2015).

2. The criteria for the assignment of a TDIU have not been met. 38 U.S.C.A. 
§§ 1155 , 5107, 5110 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

In this decision, the Board will discuss the relevant law it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code ("38 U.S.C.A."); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations ("38 C.F.R."); and the precedential rulings of the Court of Appeals for the Federal Circuit (as noted by citations to "Fed. Cir.") and the Court of Appeals for Veterans Claims (as noted by citations to "Vet. App.").

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. 38 U.S.C.A. 
§ 7104(d) ; see also 38 C.F.R. § 19.7 (implementing the cited statute); Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999); Gilbert v. Derwinski, 1 Vet. App. 49, 56-57 (1990) (Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction; the Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts).


Duties to Notify and Assist

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate the claim, including apprising him of the information and evidence VA will obtain versus the information and evidence he is expected to provide. 38 C.F.R. § 3.159 (2015). 

In a claim for an increased evaluation, the Court has held that in cases, as here, where service connection has been granted and an initial disability rating and effective date assigned, the typical service-connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been satisfied. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490-91 (2006); Dunlap v. Nicholson, 21 Vet. App. 112, 117 (2007); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); 38 C.F.R. § 3.159(b)(3). Therefore, in this circumstance VA does not have to provide additional VCAA notice concerning these "downstream" disability rating and effective date elements of the claim. See Goodwin v. Peake, 
22 Vet. App. 128 (2008). See also Dunlap v. Nicholson, 21 Vet. App. 112 (2007) and VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004). Rather, according to the holding in Goodwin and its progeny, instead of issuing an additional VCAA notice letter in this situation concerning the downstream disability rating and effective date elements of the claim, the provisions of 38 U.S.C.A. § 7105(d) require VA to issue a Statement of the Case (SOC) if the disagreement is not resolved, and this occurred in this particular instance.

A June 2012 SOC adjudicated this downstream claim after the Veteran had expressed his timely disagreement with the initial rating assigned for his PTSD. Therefore, he has received all essential notice, has had a meaningful opportunity to participate effectively in the development of his claim, and is not prejudiced by any technical notice deficiency along the way. The Veteran has not alleged any prejudice with regard to the content or timing of the notice he was provided, certainly not shown that any such error is outcome determinative of the claim. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

The duty to assist provisions of the VCAA have also been met. The RO obtained the Veteran's service treatment records (STRs), post-service VA treatment records and scheduled VA psychiatric examinations in December 2009 and January 2010. Additionally, in accordance with the October 2014 remand, the RO obtained missing VA treatment records and afforded the Veteran a VA psychiatric examination in March 2015. The agency of original jurisdiction (AOJ) has substantially complied with the remand orders and satisfied the duty to assist.

The Veteran has not made the RO or the Board aware of any additional evidence that must be obtained in order to fairly decide the appeal. He has been given ample opportunity to present evidence and argument in support of his claim. Pursuant to 38 C.F.R. § 3.655, all relevant evidence necessary for an equitable disposition of the Veteran's appeal of the issues have been obtained and the case is ready for appellate review. General due process considerations have been complied with by VA. See 38 C.F.R. § 3.103 (2015).

Merits of the Increased Rating Claim

Disability evaluations are determined by comparing a Veteran's symptoms with criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4 (West 2014). When a question arises as to which of two ratings apply under a particular diagnostic code, the higher of the two evaluations is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2015).

The Veteran's entire history is reviewed when making disability evaluations. See generally 38 C.F.R. § 4.1 (2015); Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where, as here, the question for consideration is the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection and consideration of the appropriateness of a staged rating are required. See Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). VA adjudicators must consider whether to "stage" the ratings, meaning assign different ratings at different times during the rating period to compensate him for times when the disability may have been more severe than at others. The Court has held that consideration of the appropriateness of a staged rating is required for an increased rating claim. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

The Veteran's service-connected PTSD has been initially rated under the general rating formula for mental disorders. See 38 C.F.R. § 4.130, Diagnostic Code 9411 (2015).

Under the general formula for rating mental disorders, a 70 percent evaluation is warranted where the evidence shows occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and an inability to establish and maintain effective relationships.

A 100 percent rating is warranted when there is total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene; disorientation to time and place, memory loss for names of close relatives, own occupation, or own name.

The use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of symptomatology contemplated for each rating. In particular, use of such terminology permits consideration of items listed as well as other symptoms, and contemplates the effect of those symptoms on the claimant's social and work situation. See Mauerhan v. Principi, 16 Vet. App. 436 (2002).

The Board is to consider the Global Assessment of Functioning ("GAF") scores that have been reported during the rating period for consideration. GAF scores are a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness." See Carpenter v. Brown , 8 Vet. App. 240, 242 (1995).

GAF scores of 31 to 40 indicate some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant); or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work).

GAF scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideations, severe obsessional rituals, frequent shoplifting); or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). 

GAF scores from 51 to 60 represent moderate symptoms, such as flat affect and circumstantial speech, and occasional panic attacks; or moderate difficulty in social, occupational, or school function (such as few friends, conflicts with peers or co-workers). 

GAF scores ranging from 61 to 70 indicate some mild symptoms (e.g., depressed mood and insomnia); or some difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). See 38 C.F.R. 
§ 4.130 (incorporating by reference the VA's adoption of the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), for rating purposes).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The preponderance of the evidence is against the claim. Although there is no question that the psychiatric disorder results in some occupational and social impairment with deficiencies in areas such as thinking and mood, the Veteran has not had total occupational and social impairment at any time since submission of the claim. The Veteran has maintained both social and familial relationships, has adequate judgment, fair to adequate abstract thinking, and he maintained the same employment for 30 years, before he voluntarily retired.

During his January 2010 VA psychological examination, the Veteran presented in disheveled clothing and was restless with slurred speech. The examiner reported that the Veteran was cooperative and friendly; however, he was also agitated, depressed and had attention disturbance. The examiner noted that the Veteran did not have inappropriate behavior, obsessive/ritualistic behavior, panic attacks, homicidal thoughts or suicidal thoughts. The Veteran indicted that he had no friends, did not socialize with anyone except his wife and children, did not enjoy being outside of the home and would only engage in activities that he could do around the home, such as building furniture. The examiner determined that the Veteran did not have total occupational and social impairment, but his symptoms resulted in deficiencies in thinking and mood. She described the Veteran as having persistent re-experiencing of his military trauma, avoidance of cues of his trauma, and increased arousal associated with his trauma. The Veteran was diagnosed with chronic PTSD and assigned the Veteran a GAF score of 44. This evidence demonstrates that the Veteran did not have total occupational and social impairment and a higher rating than 70 percent was not warranted. 

The Veteran was afforded another VA psychological examination in March 2015. The Veteran reported that he and his grandson started a lawn business. He also reported that he helps his wife "maybe a couple days a week" in running a group home they jointly own. Additionally, the Veteran reported that he took some courses on painting cars in 2014, and also took a few night classes at a community college. He indicated that he remains happily married and described his relationships with his wife, sons and stepdaughter as "good." He reported having a couple of friends who he enjoys seeing every two or three months, and he identified leisurely activities that he enjoys, such as watching television, playing with his young son and reading books.

The examiner noted that the Veteran reported irritability, difficulty sleeping, nightmares, avoidance of trauma reminders, and mild hypervigilance. However, he also noted that the Veteran did not describe a notable level of functional impairment as a result.

The March 2015 VA examiner provided a comprehensive summary of the Veteran's mental health history. The examiner noted that in May 2006, the Veteran's private physician diagnosed the Veteran with PTSD, major depressive disorder due to general medical conditions and chronic sleep disorder due to general medical condition. The Veteran had received three days of in-patient treatment at the VA and had also attended four sessions of a PTSD group. The Veteran's GAF score was 30 at that time.

The Veteran continued to receive psychiatric treatment at VA. See July 2000 through March 2015 VA treatment records; July 1998 through April 2015 VA treatment records. In December 2010, the Veteran attended VA for a routing follow-up. See December 2010 VA treatment records. At that time, the Veteran reported that he was having bad nightmares. In December 2011, the Veteran reported that he is "better" regarding mood and irritability, but he still was not sleeping well. See December 2011 VA treatment records. He was characterized as stable. Id. In April 2012, the Veteran reported that he would forget "a lot of stuff" and lose things. See April 2012 VA treatment record. In May 2013, the Veteran reported having dreams about deceased people and expressed interest in attending PTSD classes. See May 2013 VA treatment records.

Upon review of the Veteran's electronic file and examination of the Veteran, the examiner determined that the Veteran's PTSD was characterized by "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation." The examiner opined that the Veteran's PTSD did not render him unable to secure or follow a substantially gainful occupation because in addition to the aforementioned evidence, the Veteran did not describe any notable difficulties while working in the past and the Veteran volunteers without difficulty. Notably, the Veteran held gainful employment at the post office for over 30 years without difficulty and retired from his position due to age, not due to the inability to complete his work tasks. Moreover, the examiner noted that the Veteran was recently awarded adoptive custody over a child and is one of the primary caretakers for the child. Therefore, the examiner opined, and the Board agrees, that the Veteran's PTSD does not cause total occupational and social impairment.

The Veteran's psychiatric symptomatology has been consistent over the course of the appellate period. No staged ratings are therefore appropriate. Further, the Board finds that at no time during the appellate period is an assignment of the next higher 100 percent rating justified.

The Board has considered referral for an extraschedular evaluation under 38 C.F.R. § 3.21. However, there is no evidence showing that the Veteran's PTSD has caused total occupational and social impairment. Rather, all symptoms described above have been fully contemplated by the criteria of Diagnostic Code 9411. A remand to the RO for the procedural actions outlined in 38 C.F.R. § 3.321(b)(1), which concern the assignment of extraschedular evaluations in "exceptional" cases is not appropriate. See Thun v. Peake, 22 Vet. App. 11 (2008).

The preponderance of the evidence is against the Veteran's claim and an initial increased evaluation in excess of 70 percent for PTSD must be denied. See 
38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 55.






Merits of the TDIU claim

The Veteran essentially contends that his service-connected disabilities render him unemployable. 

A TDIU may be assigned where the schedular rating is less than total, when the person is unable to secure or follow a substantially gainful employment as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16(a). 

"Substantially gainful employment" is that employment "which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). "Marginal employment shall not be considered substantially gainful employment." 38 C.F.R. § 4.16(a).

The determination of whether a veteran is unable to secure or follow a substantially gainful occupation due to service-connected disabilities is a factual rather than a medical question and is an adjudicative determination properly made by the Board or the RO. Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of his symptoms. Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

The Veteran has five service-connected disabilities: eczema rated at 10 percent disabling; residual scars of the left arm, rated at 20 percent disabling and residual scars of the right arm, rated at 20 percent disabling; diabetes mellitus rated at 20 percent disabling; and PTSD rated at 70 percent disabling. 

Because the Veteran has five service-connected disabilities, with at least one disability ratable at 70 percent, and sufficient additional disability to bring the combined rating to 90 percent, the Veteran meets the threshold percentage requirements for consideration of a TDIU on a schedular basis. 38 C.F.R. § 4.16(a). 

Firstly, the Veteran's periods of unemployment have not been due to his service-connected disabilities, but rather to his voluntary retirement at age 55. VA treatment records show that the Veteran's service-connected disabilities do not impact the Veteran's ability to secure substantially gainful employment. As indicated above, the Veteran voluntarily retired after 31 years of employment due to age and in order to be a full-time caregiver for his mother who requires assistance with activities of daily living. See the December 2002 VA treatment records, the January 2010 VA examination, the July 2013 VA examination. 

In April 2002, the Veteran indicated that there was pressure at work due to downsizing and pressure to retire. See the April 2002 VA treatment records. He stated that his main problem was not his job because he had plans to retire soon anyway. Id. In February 2002, the Veteran was on sick leave since having a motor vehicle accident the prior year, but he stated that he would be returning to "work for a little while before he retires so he will not lose benefits." Id.

In July 2013, the Veteran underwent a VA examination to evaluate his diabetes mellitus. The examiner reported that the Veteran did not require regulation of activities as part of medical management of diabetes. He also reported that the diabetes did not impact the Veteran's ability to work.

As discussed above, the Veteran underwent a VA psychological examination in March 2015 and the examiner opined that the Veteran's PTSD did not render him unable to secure or follow a substantially gainful occupation. Since his voluntary retirement in approximately 2002, the Veteran and his grandson started a lawn business, he helps his wife run the group home that they jointly own and he has taken college courses. 

The affirmative evidence shows that the Veteran's service-connected disabilities do not prevent employment, rather he became voluntarily unemployed when he retired after 31 years of consistent work due to age, and also to care for his elderly mother on a full time basis.

The preponderance of the competent, credible, and probative evidence is against a finding that Veteran's service-connected disabilities preclude him from securing and maintaining substantially gainful employment and entitlement to a TDIU must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.340, 3.341, 4.16; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

As the preponderance of the evidence does not show that he is unable to secure and follow a substantially gainful occupation solely by reason of his service-connected disabilities, the Board does not find that referral for extraschedular consideration is warranted. 38 C.F.R. § 4.16(b).


ORDER

An initial disability rating in excess of 70 percent for PTSD is denied.

A total disability rating based on individual employability due to a service-connected disabilities is denied.



____________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs