http://www.va.gov/vetapp16/Files6/1644971.txt

Citation Nr: 1644971 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 11-14 201 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky

THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent for a headache disability, a manifestation of the service-connected mandible disability. 

2. Entitlement to an initial rating in excess of 10 percent for cervical spine degenerative disc disease, a manifestation of the service-connected mandible disability. 

3. Referral for extraschedular consideration for service-connected mandible disability.

4. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities. 

REPRESENTATION

Appellant represented by: Kentucky Department of Veterans Affairs

ATTORNEY FOR THE BOARD

S. B. Mays, Counsel

INTRODUCTION

The Veteran served on active duty from September 1971 to August 1974.

By way of history, based on a prior appeal to the Board of Veterans' Appeals (Board), the Board increased the rating for the service-connected mandible disability from zero to 10 percent, and that 10 percent rating was implemented in a February 2010 rating decision issued by the Regional Office (RO) of the Department of Veterans Affairs (VA), in Louisville, Kentucky. 

This matter comes to the Board on appeal from the RO's February 2010 rating decision which assigned a 10 percent to the mandible disability, effective July 28, 2005. 

In May 2011, the Veteran requested to testify at a Board hearing. However, he withdrew that request by way of December 2011 correspondence. 

In a December 2011 rating decision, the RO increased the rating for right mandible disability to 20 percent, effective January 26, 2010. 

In March 2014, the Board remanded the case to obtain additional evidence and to afford the Veteran an additional examination. 

Thereafter, the Appeals Management Center (AMC), in a September 2014 rating decision, awarded an even earlier effective date of July 28, 2005, for the award of the 20 percent rating for mandible disability. Because the maximum schedular rating for the mandible disability was not assigned however, the Veteran's increased rating claim remained in controversy. AB v. Brown, 6 Vet. App. 35, 38 (1993).

In a December 2014 decision, the Board denied a rating in excess of 20 percent for right mandible disability, and assigned separate 10 percent ratings for headaches and cervical spine disability, as manifestations of the mandible disability. Also, the Board remanded for further development the issues of entitlement to: a rating higher than 10 percent for headaches; a rating higher than 10 percent for cervical spine disability; referral for an extraschedular rating for mandible disability; and a TDIU. 

In a February 2015 rating decision, the AMC implemented the separate10 percent ratings assigned for headache and cervical spine disabilities, effective May 13, 2005. 

In a May 2016 rating decision, the AMC increased the rating for headaches from 10 to 30 percent, effective May 13, 2005.

The appeal has since returned to the Board for further appellate consideration.

As discussed in further detail below, the issues of an increased rating for headaches, referral for extraschedular consideration, and TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The Veteran is diagnosed with degenerative disc disease of the cervical spine and exhibits forward flexion to no worse than 45 degrees. 

2. Forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; a combined range of motion not greater than 170 degrees; muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour; incapacitating episodes of disc disease, or separately ratable, associated neurologic impairment aside from the already service-connected headaches, have not been demonstrated or approximated at any time during the appeal period. 

 CONCLUSION OF LAW

The criteria for an initial rating higher than 10 percent for cervical spine disability are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5237 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Introductory Matters

In this decision, the Board will discuss the relevant law which it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code ("38 U.S.C.A."); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations ("38 C.F.R.") and the precedential rulings of the Court of Appeals for the Federal Circuit (as noted by citations to "Fed. Cir.") and the Court of Appeals for Veterans Claims (as noted by citations to "Vet. App.").

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. See 38 U.S.C.A. § 7104 (d); see also 38 C.F.R. § 19.7 (implementing the cited statute); see also Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999); Gilbert v. Derwinski, 1 Vet. App. 49, 56-57 (1990) (the Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction). The Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts.

II. Duties to Notify and Assist

As provided by the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist a claimant in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

The Veteran's cervical spine claim arises from his disagreement with the initial rating assigned following the grant of service connection. Once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

VA also has a duty to assist him in fulfilling developing the evidence concerning his claim. This duty includes assisting him in the procurement of records and, when necessary, providing an examination. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Veteran's claims file contains his service treatment records (STRs), post-service VA and private medical evaluation and treatment records, records from the Social Security Administration (SSA), and statements provided by the Veteran and his representative in support of the claim. The Veteran was afforded a VA compensation examination in November 2015 to determine the current nature and severity of his cervical spine disability and the examination is adequate to decide this claim. 

Neither the Veteran nor his representative has identified, and the record does not otherwise suggest, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. No further notice or assistance to him with this claim is required. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

III. Pertinent Laws and Regulations Governing Increased Rating Claims

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities, which assigns ratings based on average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2015). 

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). The Court has also held that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991). Instead, the Mitchell Court explained that pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance (38 C.F.R. § 4.40), as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing (38 C.F.R. § 4.45). Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Therefore, in evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. 

Moreover, the provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011). 
The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the Veteran. Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). In doing so, equal weight is not accorded to each piece of evidence in the record as every item of evidence does not have the same probative value. Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). 

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert, 1 Vet. App. at 53; see also 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.

Cervical Spine Disability Claim

Spine disabilities may be rated under the General Rating Formula for diseases and Injuries of the Spine set forth in 38 C.F.R. § 4.71a, DCs 5237-5242, or alternatively under the Formula for Rating Intervertebral Disc Syndrome (IVDS) based on incapacitating episodes found in DC 5243.

Under the General Rating Formula for Diseases and Injuries of the Spine, ratings are assigned as follows: 

(1) 10 percent - Forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height; 

(2) 20 percent - Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; 

(3) 30 percent - Forward flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine; 

(4) 40 percent -- Unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine is 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine; 

(5) 50 percent -- Unfavorable ankylosis of the entire thoracolumbar spine; and 

(6) 100 percent -- Unfavorable ankylosis of the entire spine. 

IVDS (preoperatively or postoperatively) may be evaluated either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating IVDS Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined. See 38 C.F.R. § 4.25 (combined ratings table). 

Under the IVDS Formula, incapacitating episodes of disc disease having a total duration of at least six weeks during the past 12 months warrants a 60 percent rating. For incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months, a 40 percent rating is warranted. With incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months, a 20 percent rating is warranted. With incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months, a 10 percent rating is warranted. 38 C.F.R. § 4.71a, DC 5243.

In this case, the Veteran has been in receipt of a 10 percent rating for cervical spine disability since May 13, 2005.

During an August 2005 examination conducted for SSA disability purposes, his range of cervical spine motion was as follows: forward flexion was to 45 degrees; bilateral lateral flexion was to 30 degrees, and bilateral lateral rotation was to 80 degrees. There was no tenderness over the cervical spinous process or paravertebral muscle spasms. Neurologic examination of the upper extremities was normal. His grasping of objects and use of hands was unimpaired. SSA determined that his ability to perform work related duties would be impaired due to leg pain and arterial occlusive disease of left leg; no diagnosis pertinent to the cervical spine was rendered.

According to May 2010 private chiropractor notes from Simpson Chiropractic, the Veteran was noted to have a "mild" reduction of active range of cervical flexion, extension, right lateral flexion, and bilateral lateral rotation. Passive range of motion revealed mild restriction of cervical flexion and right cervical rotation; all other passive cervical ranges of motion were within normal limits. The chiropractor noted that, after a plan of care, there was significant decrease in the Veteran's cervical pain. 

In November 2015, the Veteran underwent a VA compensation of the cervical spine. He reported extreme tightness-type pain in his neck for which he applies an ice pack to relieve the pain. He has also seen the chiropractor and received physical therapy on his neck. He did not report any radicular symptoms. He reported a sharp pain on both sides of his neck when he turns his head suddenly. 

On VA examination, range of cervical spine motion was from zero to 45 degrees. Bilateral lateral flexion was to 45 degrees, and bilateral lateral rotation was to 50 degrees. Tenderness was demonstrated on palpation of the paracervical muscles. Repetitive motion testing did not cause additional functional loss of function or range of motion. Repeated use of the cervical spine was not observed. The examiner was unable to say without resorting to mere speculation whether pain, weakness, fatigability, or incoordination significantly limited functional ability with repeated use over a period of time. The examiner noted that the Veteran would have additional limitation during a joint flare-up or when the joint is repeatedly used over a period of time, manifested primarily by pain and difficulty continuing joint movement. Additional loss of range of motion could not be ascertained since the primary disability is related to pain and loss of repetitive use rather than loss or range of motion. The Veteran had palpable muscle spasms in the paracervical muscles, but those spasms did not result in abnormal gait or abnormal spinal contour. Muscle strength, deep tendon reflex, and sensory testing of the upper extremities was normal. The Veteran did not have any radicular signs or symptoms due to radiculopathy. Ankylosis of the spine was not demonstrated. He had no associated neurologic abnormalities. IVDS was demonstrated and there were no episodes requiring bedrest in the prior 12 months. It was noted that the Veteran's reported long-standing neck pain is relieved with Tylenol with codeine and acupuncture. X-rays of the cervical spine showed narrowing disc space from C5-7 and some osteophytic encroachment at C6 and C7 neural foramen; impression was lower level cervical spine degenerative disc disease with neural foraminal encroachment. The examiner indicated that the Veteran's cervical spine disability impacted his ability to work in that it would cause limitation to full range of motion due to pain and decreased range of motion. The examiner stated that the Veteran's diagnosis of IVDS is a progression of the initial cervical spine strain. The examiner estimated that the Veteran's neck condition had been present for the past 10 years. Diagnoses were cervical strain and IVDS.

The RO assigned the current 10 percent rating for cervical spine disability based on evidence of localized tenderness and muscle spasms not resulting in abnormal gait or spinal contour and combined range of cervical spine motion greater than 170 degrees but not greater than 335 degrees.
On review of all evidence, the Board finds that the criteria for a rating higher than 10 percent for his cervical spine disability have not been met at any time during the appeal period. 

To support the next-higher rating of 20 percent, the evidence must meet or approximate forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; a combined range of motion of the cervical spine not greater than 170 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. These criteria have not been met or approximated. The relevant evidence of record demonstrates forward flexion of the Veteran's cervical spine to no worse than 45 degrees. Therefore a rating higher than 10 percent is not warranted based on range of motion findings under the General Rating Formula. 

There is also no basis for the assignment of a higher rating based on consideration of any of the factors addressed in 38 C.F.R. §§ 4.40, 4.45 and DeLuca, 8 Vet. App. at 204 -07. The November 2015 VA examiner determined that the Veteran would have additional limitation during a joint flare-up or when the joint is repeatedly used over a period of time. Overall however, the Board finds that the current 10 percent rating adequately portrays any functional impairment, pain, fatigue, weakness, and any flare-ups that the Veteran experiences as a consequence of his cervical spine disability. That is, his functional loss is not equivalent to forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees to meet the criteria for the next higher rating under DC 5237. 

Moreover, although muscle spasms of the paracervical spine were demonstrated during the November 2015 VA examination, the examiner indicated that they were not severe enough to result in an abnormal gait or abnormal spinal contour. 

Based on these foregoing reasons and bases, a rating higher than 10 percent is not warranted under the General Rating Formula.

A higher rating is also not warranted under the IVDS Formula. For reference, VA regulations define an incapacitating episode as a period of acute signs and symptoms due to disc disease that requires bed rest prescribed by a physician and treatment by a physician. See DC 5243. The evidence of record does not demonstrate any physician-prescribed bed rest and the Veteran does not assert otherwise. Because the competent evidence does not show that the Veteran's disc disease is productive of any incapacitating episodes as defined by regulation, let alone any having a total duration of at least two weeks but less than four weeks per year, the criteria for an initial rating higher than 10 percent are not met under the IVDS formula. 

The Board also considered whether a separate rating is warranted for any neurologic impairment. However, aside from the Veteran's headache disability, there is no evidence of any neurologic impairment associated with the cervical spine disability. The 2005 SSA examination report and the November 2015 VA examination report show normal neurologic evaluations of the upper extremities. Moreover, there were no signs or symptoms of radiculopathy in his upper extremities during the November 2015 VA examination, and the examiner specifically noted that the Veteran had no reports of radicular symptoms and had no neurologic consultations. 

The Board considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, irrespective of whether they have been raised by him, his representative, or otherwise by the record, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Based on the foregoing, the Board concludes that a rating higher than 10 percent for the Veteran's cervical spine disability is not warranted for any time during the appeal period. 

The issues of referral for extraschedular consideration and entitlement to a TDIU are addressed in the remand portion below.

ORDER

Entitlement to an initial rating higher than 10 percent for the Veteran's cervical spine disability is denied.

REMAND

Further development is necessary prior to analyzing the merits of the increased rating claim for headaches, the question of referral for extraschedular consideration, and the TDIU claim.

Pursuant to the Board's December 2014 remand, the Veteran underwent a VA compensation examination for headaches in November 2015, and after the AMC's issuance of its May 2016 supplemental statement of the case (SSOC), the Veteran submitted additional medical evidence in the form of CT and MRI studies of the brain conducted at the Lexington VAMC, as well as a recent headache diary completed by the Veteran. Because there is no indication that the Veteran waived initial RO consideration of that VA medical evidence, the increased rating claim for headaches must be remanded for the AOJ's consideration of the evidence in the first instance, and for issuance of an SSOC reflecting such consideration.

In the December 2014 remand, the Board also requested that the AOJ consider referral for extraschedular consideration. In particular, the Board noted that referral required consideration not only of the individual impact of the Veteran's service connected disabilities in assessing the disability picture, but also the collective impact of his service-connected disabilities. While the AMC appears to have considered the individual impact that the Veteran's cervical spine and headache disabilities have on his total disability picture, there is no indication that it considered the collective impact of the service-connected disabilities, as requested. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). For this reason, the extraschedular issue must be remanded. 

Lastly, the TDIU claim is intertwined with the increased rating claim for headaches being remanded here. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all of the Veteran's outstanding medical records from the Huntington and Lexington VAMCs, and associate them with the claims file. 

2. After considering the evidence received from the Veteran on June 3, 2016 (CT and MRI studies of brain, and headache diary for period from March to May 2016), determine whether any additional development is needed, to include an updated headache examination, if indicated. 

3. Following the above-development, consider whether referral to the Director of Compensation and Pension Services or the Undersecretary for Benefits for extraschedular consideration under 38 C.F.R. § 3.321 and Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014) is appropriate. *In doing so, consider whether there is a COMBINED effect of the Veteran's multiple disabilities which is exceptional and not captured by the schedular ratings which would warrant referral for extraschedular consideration. 

If the AOJ determines that referral is not appropriate, it should associate a memorandum with the claims file dictating the rationale and reasoning for its conclusion of non-referral under VA law and regulations. 

4. Redadjudicate the issues on appeal. If the benefits are denied, provide the Veteran and his representative a supplemental statement of the case and an appropriate period of time for response.

Thereafter, subject to current appellate procedure, the case must be returned to the Board for further consideration, if otherwise in order. No action is required of the Veteran until he is otherwise notified by the RO/AMC. By this action, the Board intimates no opinion, legal or factual, as to any ultimate disposition warranted in this case. The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs